## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                          )
JUAN CARLOS NORIEGA                       )
c/o Arias, Abrego & Lopez                 )
Ave. Samuel Lewis Urbanización            )
Ciudad de Panamá, Republic de Panamá      )
                                          )      No. 1:12-cv-2006
            Plaintiff,                    )
                                          )      JURY TRIAL DEMANDED
        v.                                )
                                          )
THEHUFFINGTONPOST.COM, INC.               )
1730 Pennsylvania Avenue N.W.,            )
Suite 825                                 )
Washington, D.C. 20006                    )
                                          )
            Defendant.                    )
                                          )
```

## COMPLAINT

Plaintiff Mr. Juan Carlos Noriega, by and through his undersigned counsel, hereby files this Complaint for defamation *per se* through libel and false light invasion of privacy against Defendant TheHuffingtonPost.Com, Inc. arising from an article Defendant maliciously and negligently published on its website falsely ascribing authorship to Plaintiff and thereby attributing to him highly offensive and defamatory beliefs he does not hold.  This false and defamatory article harmed Plaintiff's personal and business reputation, and caused him serious emotional distress, embarrassment, and personal humiliation.

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists and the matter in controversy exceeds $75,000, exclusive of interest and costs.

2.      TheHuffingtonPost.com, Inc. is subject to the general personal jurisdiction of this

Court exists pursuant to FRCP 4(k)(1)(A) and D.C. Code. § 13-334(a) because its systematic and

continuous contacts within the District of Columbia render it at home here.

3.      TheHuffingtonPost.com, Inc. is subject to specific personal jurisdiction pursuant

to D.C. Code § 13-423(a)(1), District of Columbia's long-arm statute because Defendant

maintains an office in the District of Columbia, conducts business within the District through its

local office and through its "HuffPost DC" website, and receives revenue from advertising

targeted at District of Columbia residents.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b).  Defendant has an

office located within the District, a local chapter on the website for D.C. residents, and engages

in regular business with D.C. residents and within the District.

## The Parties

1.      Plaintiff Juan Carlos Noriega ("Mr. Noriega") is a citizen and resident of the

Republic of Panama.  He holds an LL.M and is a lawyer and founding partner at the prestigious

law firm Arias, Abrego, López & Noriega based in Panama City, Panama.  Mr. Noriega

specializes in Corporate Law and International Business Transactions.  Many of his clients are

from different countries, including from the United States of America.

2.      At no time has Mr. Noriega ever held an account with TheHuffingtonPost.Com,

Inc., submitted a comment, post, blog pitch, or had any other interaction with Defendant or its

website.

3.      Defendant TheHuffingtonPost.com, Inc. ("The Huffington Post") is a Delaware

corporation with its principal place of business at 560 Broadway, Suite 401, New York, New

York, 10012.  Upon information and belief, it maintains an office at 1730 Pennsylvania Ave

NW, Suite 825, Washington, D.C. 20006.  Defendant was founded by Arianna Huffington,

Kenneth Lerer, and Jonah Peretti, as "the internet newspaper" featuring various online news

sources.  Defendant published the article "The Primacy of the Rule of Law," falsely ascribing

authorship to Plaintiff.

4.      Defendant features a local news section titled "HuffPost DC" which specifically

targets D.C. residents through local advertising and by providing local news, gossip, and

information on restaurants, real estate, local attractions, events, D.C. impact, and the "best of

D.C."  Further, Defendant targets D.C. resident readership by providing links to thirty-seven

D.C.-related external blogs such as, The Washington Post: D.C. Wire, Washingtonian: Capital,

the Hill is Home, 14th & You, and Georgetown Dish, among others.  It also provides access to

nineteen D.C.-related external news sources such as, the Washington Post: Local, the

Washington Times: Local, and the Washington Business Journal.

5.      Defendant is an information content provider responsible, in whole or in part, for

the creation, development, and coverage of politics, media, business, entertainment, living,

health, style, the green movement, world news, and comedy.  It provides its own news, news-

related blogs, and links to external online news sources.  Articles are pitched to the "HuffPo Blog

Team," Defendant's editorial board, much in the way freelance journalists do with other

information providers such as the Washington Post, the Washington Times, and other news

sources.

## Facts Common to Both Counts

### Background Information on Publishing on Defendant's Website

6.      In order to publish any information on Defendant's website, a person must first create an account, which requests personal information.  After creating an account, a person may freely comment on articles or reply to comments posted by other users.

7.      Upon information and belief, in order to be able to publish an article, an account-user must first contact the HuffPost Blog Team and pitch an idea to the team.  If the HuffPost Blog Team approves the idea, it contacts the user to continue with the publication process. Further, only those that Defendant considers "signature contributors" will be able to publish articles on "The Blog," akin to the way freelance journalists become contributors to other newspapers.

### Examples of Defendant's Further Participation in Editing and Publishing the Article

8.      On or around August 2, 2012, at 8:51 p.m. The Huffington Post published an article titled "The Primacy of the Rule of Law" ("the article") on its website at: www.huffingtonpost.com/juan-carlos-noriega/shakeel-afridi-arrest_b_1735374.html.

9.      Defendant falsely attributed the authorship of the article to Mr. Noriega.  Attached hereto and incorporated herein by reference as **Exhibit A** is a true and correct copy of the article.

10.     Defendant included in the article various adjectives such as "scary," "outrageous," and "infuriating" as tabs that compel the reader to "react" towards the article.  *Id*.

11.     Defendant listed various relevant terms at the top of the article, such as "Mr. Shakeel Afridi Pakistan," "Osama Bin Laden," "Vaccination," and "World News," and enabled the article to be linked to those terms when they appear anywhere throughout the website.  *Id*.

12.     Defendant linked various words within the article to outside news sources relating to the same subject matter.  *Id*.

13.     Further, Defendant enabled the article to be mass-shared through social networking mediums such as Facebook, Twitter, Digg, Reddit, Stumbleupon, through iPhone, Blackberry, and Android devices, through email and by publicly recommending the article through Google.  *Id*.

14.     Defendant published a short biography and picture of Plaintiff linked to the article and listed his name as one of "HuffPost's signature lineup of contributors."  The biography also displays the article.  Attached hereto and incorporated herein by reference as **Exhibit B** is a true and correct copy of the biography as it appeared on The Huffington Post's website.

<u>**The Article Is False and Defamatory**</u>

15.     Mr. Noriega did not write, submit, or consent to having the article, or his picture, posted on Defendant's website under his name.

16.     Mr. Noriega does not and has never had an account with The Huffington Post and has never submitted any information, comments, blog-pitches, articles or had any other contact with Defendant or its website.

17.     Mr. Noriega is a private figure and has <u>not</u> sought publicity regarding the issues discussed in the article nor has he sought to influence the outcome of those issues.

18.     Subsequently after Mr. Noriega learned of the website article, he, through his undersigned counsel, informed Roy Sekoff, the Editor of the Huffington Post, that the article was not written by him and demanded that the article be fully retracted.  Attached hereto and incorporated herein by reference as **Exhibit C** is a true and correct copy of that letter.

19.     Despite the notice of the article's false and defamatory contents, The Huffington Post has failed to respond to Mr. Noriega's request to retract the article.

20.     The article is false and defamatory on its face by imputing serious and egregious statements of beliefs regarding terrorism, Pakistan, bin Laden and severe criticism of the CIA and the United States government, that the Plaintiff does not hold.  The following statements contained in the article serve as examples of the false and defamatory language that is offensive to a reasonable person:

        a.      "Although understandable in the emotional framework of Osama bin Laden, the outrage across the United States over the arrest of Dr. Shakeel Afridi, the Pakistani doctor who ran a sham vaccination program for the CIA in Abbottabad, is inconsistent with every nation's basic commitment to the rule of law."  Ex. A ¶ 1.

        b.      "Demands by the United States to release Afridi prior to the completion of the legal process show a complete disregard for the fundamental principles of Pakistan's democracy and jurisprudence. Furthermore, this unwarranted interference may squander the novel opportunity this case provides to make further progress…" *Id.* ¶ 2.

        c.      "There are, of course, moral and ethical issues associated with Afridi's participation in a fake vaccination campaign, a clear violation of the Hippocratic oath, in one of the few countries on earth where polio cases are dramatically climbing. […]  Now, suddenly, Pakistani parents, especially in the rural areas of the country, have become skeptical of vaccinations and inoculations in light of the CIA scam, and are refusing to immunize their children. […] the program has ground to a halt. The Taliban have threatened to kill doctors who participate in vaccinations."  *Id.* ¶ 3.

d.      "But let us examine the legal issues that are at the heart of the Afridi matter. Afridi was convicted and sentenced by a tribal Jirga in accordance with the Frontier Crimes Regulation (FCR), not for assisting the CIA in the bin Laden case, but for his links to Mangal Bagh [...] Mangal Bagh is the leader of a militant organization that previously ruled large swaths of Kyber Agency and has consistently launched attacks against the government of Pakistan." *Id.* ¶ 4.

e.      "Emotion is an indefensible ground for the United States government or the U.S. Congress to demand that Pakistan release a man who may or may not be guilty of criminal activity in Pakistan before the legal process is complete. U.S. efforts to coerce Pakistan into releasing Afridi not only undermine the sovereignty of Pakistan, but endanger the credibility of its democratic principles. Nations might not always understand or agree with the systems of other nations. For example, many in the world may not understand how in the United States it is legal for citizens to buy automatic assault weapons, like that used in the recent slaughter in Colorado, that are unrelated to hunting or self-defense. But these are moral and ethical questions that are irrelevant to the rule of law in America." *Id.* ¶ 8.

f.      "Rather than criticize Pakistan, a nation founded on the rule of law like the United States should exercise patience and recognize this important step in Pakistan's legal jurisprudence." *Id.* ¶ 9.

g.      "And to those who are demanding that Afridi, irrespective of guilt or innocence be pardoned because of the mitigating circumstances, let us be clear. The president of Pakistan can only exercise the power of pardon when an individual has exhausted all of his legal rights and sources of relief [...] This too should be understood and respected in the United States. In a democracy, irrespective of emotion, the law is the law." *Id.* ¶ 10.

h.      "As a sad footnote, thousands of innocent children all over Pakistan may be crippled for life with polio, and thousands of others may die from hepatitis, because the CIA ran a fake vaccination scheme. Perhaps the U.S. Congress, instead of threatening to cut off assistance to Pakistan over Afridi, should rather consider compensating his victims." *Id.* ¶ 11.

21.      By maliciously and negligently allowing, approving, and assisting with the publishing of this article, Defendant defamed Plaintiff by making it appear that he blames the United States government and the CIA for running a fake vaccination campaign in Pakistan (a country with increased polio problems), has caused Pakistani parents not to inoculate their children, and caused the death of doctors by the Taliban in retaliation of the scam.  Furthermore, the article portrays Plaintiff as accusing the United States of violating its commitment to the rule of law, acting on the whim of emotion, and attempting to coerce the Pakistani government to illegally release Dr. Shakeel Afridi by threatening to cut off its assistance to Pakistan.  Plaintiff does not hold any of these beliefs and has never voiced any implication or otherwise in this manner.

22.      The false and defaming article is available world-wide through the Defendant's website by looking up Plaintiff's name, searching for the title of the article, or by viewing other articles related to the same subject that are linked to the article.  Further, search engines such as Google, Yahoo!, and Ask.com also link Plaintiff with the article.

### The Published Article Caused Plaintiff Serious Injury

23.      By publishing this false, defaming, and misleading article under Mr. Noriega's name, the article also placed him in a false light before the world-at-large, in a manner that would be highly offensive to a reasonable person, and has caused serious damage to Plaintiff's professional and personal reputation.

24.     The publication of the article has placed him in serious jeopardy with the Department of Homeland Security regarding his immigration status and the ability to move freely between Panama and the United States for business and personal purposes.  It also severely decreases the possibility of obtaining legal permission to conduct business in the District of Columbia and the United States through a work visa.

25.     The publication of this false, defaming, and misleading article caused Plaintiff to suffer loss of personal reputation, embarrassment, personal humiliation, general emotional distress, and specifically, stress relating to possible negative ramifications on his U.S. travel and work visas.

## COUNT I: Defamation *Per Se*

26.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 25.

27.     Defendant contributed to the editing and publishing of the article on its website, falsely identifying Plaintiff as the author and placing his picture alongside the article.

28.     The article contains statements of opinions and beliefs not held by Plaintiff that have  the effect of making Plaintiff seem anti-U.S. government and anti-CIA and are defamatory on their face.

29.      Defendant published the article without privilege and without Plaintiff's consent.

30.     The nature of the strong allegations, beliefs, and accusations regarding sensitive subjects such as terrorism, Pakistan, bin Laden and strong criticism of the CIA and the U.S. government should have heightened Defendant's due diligence in confirming the true identity of the person submitting the information as a "blog-pitch" before working with the person in writing and publishing the article on the Internet.  Defendant acted with actual malice when it published the article either with actual knowledge that the article was not written by Plaintiff or

with reckless disregard as to the true identity of the author.  At a minimum, Defendant failed to exercise reasonable care under the heightened circumstances in verifying the true identity of the person who wrote and submitted the article to be published.

31.     By ascribing the negative and false beliefs against the United States to Plaintiff, the Defendant defamed Plaintiff *per se* and has proximately caused injury to Plaintiff's professional reputation and credibility as an objective and serious international lawyer with strong understanding and ties with the United States.  Specifically, the article has caused Plaintiff to suffer in the following manner:

    a.     Loss of his personal and professional reputation in Panama, the United States, and worldwide;

    b.     Loss of business opportunities in Panama, the United States and worldwide;

    c.     Limitations in future business prospects with his law firm;

    d.     A false implication attached to him that he is not able to objectively analyze the laws in the United States, or elsewhere, without pushing a political agenda or without criticizing the policies of the United States;

    e.     Being subjected to unwanted negative media attention and negative reviews; and

    f.     Emotional distress, embarrassment and personal humiliation.

32.      Even after Plaintiff informed Defendant in writing that he was not the author of the article, did not hold those beliefs, and requested an immediate retraction of the article, Defendant failed to do so.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor

and against Defendant, issue injunctive relief, including that Defendant issue a conspicuous

retraction and correction of the record, monetary relief in the amount of $3,000,000, or in such

greater amount to be proven at trial, pre-judgment interest, and grant such other further relief that

the Court deems appropriate.

### COUNT II: False Light Invasion of Privacy

33.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32.

34.     Defendant contributed to the editing and publication of the false and defamatory
article on its website, falsely identifying Plaintiff as the author and placing his picture alongside
the article.

35.     As soon as the article was published on Defendant's website, it immediately
became accessible throughout the entire Internet through various links attached to the article and
to Plaintiff's name.

36.     The article contains statements of opinions and beliefs not held by Plaintiff that
have the effect of placing Plaintiff in a false light, specifically, that he is anti-U.S. government,
policies and anti-CIA.  Such false light is highly offensive to a reasonable person.

37.     Defendant published the article without privilege and without Plaintiff's consent.

38.     The nature of the strong allegations, beliefs, and accusations regarding sensitive
subjects such as terrorism, Pakistan, bin Laden and strong criticism of the CIA and the U.S.
government should have heightened Defendant's due diligence in confirming the true identity of
the person submitting the information as a "blog-pitch" before working with the person in
writing and publishing the article on the Internet.  Defendant acted with actual malice when it
published the article either with actual knowledge that the article was not written by Plaintiff or
with reckless disregard as to the true identity of the author.  At a minimum, Defendant failed to

exercise reasonable care under the heightened circumstances in verifying the true identity of the person who wrote and submitted the article to be published.

39.     These defamatory falsehoods within the article ascribe to Mr. Noriega negative views that adversely affect his professional and personal reputation and credibility as an objective and serious international lawyer with strong understanding and ties with the United States.  As a proximate result of the publication of the false and defamatory article, Plaintiff has suffered substantial damages, including but not limited to, loss of professional and personal reputation, emotional distress, embarrassment, and personal humiliation.

40.     Even after Plaintiff informed Defendant in writing that he was not the author of the article, did not hold those beliefs, and requested an immediate retraction of the article, Defendant failed to do so.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, issue injunctive relief, including that Defendant issue a conspicuous retraction and correction of the record, monetary relief in the amount of $3,000,000, or in such greater amount to be proven at trial, pre-judgment interest, and grant such other further relief that the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. Noriega respectfully requests this Court to enter judgment in his favor and against Defendant the Huffington Post and issue an Order:

1)     requiring a) Defendant to print a full retraction stating that Plaintiff is not the author of the article; b) remove all traces of the defamatory article; and c) close any account under Plaintiff's name;

2)      mandating Defendant to conduct an investigation into who created an account in Plaintiff's name and how Defendant allowed it to occur and to provide a report on such investigation to Mr. Noriega;

3)      awarding damages for detraction from Plaintiff's good name and reputation, for mental anguish, distress and humiliation in an amount not less than $3 million dollars, or in such greater amount to be proven at trial, and pre-judgment interest and costs;

4)      assessing costs and fees incurred in the prosecution of this action; and

5)      granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

41.      Plaintiff demands trial by jury on all claims and issues so triable.


Dated:  December 14, 2012

Respectfully submitted,


/s/Benjamin G. Chew_____
Benjamin G. Chew (D.C. Bar #418577)
PATTON BOGGS LLP
2550 M Street N.W.
Washington, D.C.  20037
Telephone (202) 457-6015
Facsimile (202) 457-6315
E-mail: bchew@pattonboggs.com

*Counsel for Plaintiff*